# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-2464

_____

| | | |
|---|---|---|
| Advanced Communications Corporation, | * | |
| | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | |
| | * | |
| MCI Communications Corporation, | * | Appeal from the United States |
| originally sued as MCI Worldcom | * | District Court for the |
| Communications, Inc., | * | Eastern District of Arkansas. |
| | * | |
| Appellee. | * | |
| | * | |
| --------------------------------- | * | |
| | * | |
| City of Little Rock, Foundation for | * | |
| Educational Advancement Today, | * | |
| | * | |
| Amici on behalf of | * | |
| Appellant. | * | |

_____

Submitted:  April 12, 2001

Filed:  August 23, 2001

_____

Before WOLLMAN, Chief Judge, LOKEN, Circuit Judge, and BOGUE,[1] District
Judge.

_____

WOLLMAN, Chief Judge.

Advanced Communications Corporation (Advanced) appeals from the district
court's[2] adverse judgment on the pleadings.  We affirm.

## I.

In 1995, the International Bureau of the Federal Communications Commission
(Commission) denied Advanced's request for a second extension of time in which to
develop its Direct Broadcast Satellite system, "a radiocommunication service in which
signals from earth are retransmitted by high power, geostationary satellites for direct
reception by small, relatively inexpensive earth terminals," Advanced Communications
Corp., 11 F.C.C.R. 3399, 3402 n.3 (1995).[3]  Advanced had been granted a construction
permit for a DBS system and had been allocated various channels at different orbital
locations as part of such a system.  The International Bureau's decision denied
Advanced an extension of time because of Advanced's lack of due diligence, noting

_____

[1]The Honorable Andrew W. Bogue, United States District Judge for the District
of South Dakota, sitting by designation.

[2]The Honorable George Howard, Jr., United States District Judge for the Eastern
District of Arkansas.

[3]More specifically, "DBS is a radio communication service that uses satellites
in geostationary orbits to transmit multiple channels of video programming directly to
18-inch satellite dishes located at the premises of subscribers." DIRECTV, Inc. v.
FCC, 110 F.3d 816, 821 (D.C. Cir. 1997).  The United States has eight orbital
locations for domestic DBS transmission, each of which contains 32 channels, "each
of which . . . is capable of simultaneously transmitting from five to seven video
programs." Id.

that Advanced's "permit is null and void by its own terms" because of its failure to meet construction and diligence deadlines.

Advanced appealed the International Bureau's determination to the full Commission. Before the Commission reached its decision, MCI mailed a letter to then-Commission Chairman Hundt, copied to the other Commissioners, that urged the Commission to auction Advanced's orbital locations and channels and which stated that MCI would be willing to pay $175 million at auction for some of them.

The Commission subsequently ruled against Advanced in a 3-2 decision, with Chairman Hundt in the majority. The Commission upheld the International Bureau's determination that Advanced had failed to meet the necessary due diligence standards. It then canceled the permit and reclaimed the orbital locations and channels. Id. at 3414, 3423. The decision examined in detail Advanced's actions or lack thereof in light of the Commission's precedent and its diligence standards and in light of changes in the industry. MCI's letter was mentioned in a footnote to a section of the decision that rejected the current method of channel assignment urged by other DBS permittees and noted that the Commission planned to promulgate a new method of assignment, namely, an auction. Id. at 3424, nn.125 & 127; see also DIRECTV, Inc. v. FCC, 110 F.3d 816, 825-31 (D.C. Cir. 1997) (upholding auction rules for assignment). The Commission noted that it now had the authority to auction DBS resources, and it set out a timetable for the promulgation of new rules for doing so. Advanced Communications, 11 F.C.C.R. at 3401, 3427. The Commission subsequently received a total of $735 million at the auction for the locations and channels it reclaimed from Advanced. MCI was one of the successful bidders at the auction.

Advanced appealed the Commission's decision to the United States Court of Appeals for the District of Columbia Circuit, which affirmed in an unpublished memorandum opinion. See Advanced Communications Corp. v. FCC, 84 F.3d 1452 (D.C. Cir. 1996) (per curiam) (unpublished table decision), memorandum reported at

1996 U.S. App. LEXIS 14207 (D.C. Cir. May 6, 1996). Advanced argued that MCI's letter improperly influenced the Commission by pointing out the substantial revenues to be realized at auction, but the court concluded that Advanced had presented nothing that was sufficient to cause it to "search beyond the text" of the Commission's order to find some illicit motivation on the part of the Commission. Id. at *13. Advanced petitioned for a writ of certiorari, which was denied in Advanced Communications Corp. v. FCC, 519 U.S. 1071 (1997).

In 1998, Advanced filed a lawsuit in Arkansas state court against MCI alleging tortious interference with contract. It argued that MCI's letter to Chairman Hundt improperly influenced the Commission to rule against Advanced, thereby causing it to breach its contract with a satellite provider. The case was removed to federal district court, which ruled that Advanced was collaterally estopped from litigating the issue of whether the letter had properly influenced the Commission's decision.

Advanced argues on appeal that because it has not had the opportunity to fully and fairly litigate its allegation that MCI improperly influenced Chairman Hundt, it should not be precluded from raising that issue in the present action. Advanced frames its contention as a query: "Just because the D.C. Circuit Court said that the FCC's explanations were reasonable explanations, does that make the explanations true?" Appellant Br. at 20. MCI, in turn, argues that Advanced's complaint constitutes an impermissible collateral attack on the Commission's decision, that Advanced should be precluded from re-litigating the revenue issue that it raised to the District of Columbia Circuit, and that, in any event, MCI's letter constituted permissible lobbying. The City of Little Rock and the Foundation for Educational Advancement Today have filed amici briefs in support of Advanced.

## II.

We conclude that Advanced is collaterally estopped from suing MCI on a theory of tortious interference. "Issue preclusion, or collateral estoppel, provides that 'once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.'" Plough v. West Des Moines Cmty. Sch. Dist., 70 F.3d 512, 514 (8th Cir. 1995) (citation omitted).

Advanced does not dispute that it raised in the District of Columbia Circuit its argument that the Commission reached its decision on improper revenue concerns. As set forth above, that court concluded that Advanced had presented nothing that would warrant the court in looking beyond the face of the Commission's order. In short, the court concluded that the issue, raised without sufficient proof, was without merit. Advanced concedes that in resolving its claim of tortious interference, a fact-finder would have to re-determine whether Advanced had shown that the Commission's decision was based on other than legitimate considerations. A determination in Advanced's favor on this question would run directly counter to the decision of the District of Columbia Circuit. Accordingly, we conclude that Advanced is now barred from maintaining the present action.

The judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.